UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

——

RAYFORD CARTER,

                Plaintiff,              Case No. 1:12-cv-1315

v.                                Honorable Janet T. Neff

DANIEL HEYNS et al.,

                Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Rayford Carter is incarcerated by the Michigan Department of Corrections (MDOC) at the Ionia Maximum Correctional Facility (ICF). He brings this action on behalf of himself and a number of other prisoners who are identified in the complaint (Plaintiff and the other prisoners will be referred to as the "Named Prisoners"). Defendants are employees of the MDOC: Director Daniel Heyns; Deputy Director Thomas Finco; Royal H. Calley, Director of Mental Health Programs; Kathleen H. Mutschler, Director of Mental Health Services; ICF Warden John Prelesnik; ICF Deputy Wardens Erica Huss and Nanette Norwood; and Officer (unknown) Richardson.

Plaintiff alleges that each of the Named Prisoners has been diagnosed with a mental illness requiring medication and treatment by a psychologist and psychiatrist in order for them to maintain "mental stability." (Compl., docket #1, Page ID#5.) At one time or another, the Named Prisoners have been housed in the general prison population with other prisoners, and as a result, have been subjected to various forms of mistreatment, including "violence, sexual assaults, rape, fighting, and murder[]." (*Id.*) In addition, at one time or another, each of the Named Prisoners has been housed in administrative segregation, resulting in restrictive conditions of confinement and the denial of proper medication. The denial of medication and the conditions of confinement in segregation are harmful to the Named Prisoners' mental health, causing them to suffer "mental[] deteriorat[ion]" and to engage in violent behavior that is harmful to themselves and others. (*Id.* at Page ID##5-6.) Such behavior leads to additional disciplinary or criminal charges against them, and then additional punishment in the form of: longer periods of confinement in segregation, loss of privileges, physical restraints, and/or restrictions on physical necessities (*e.g.*, water, bedding, clothing, and food).

Plaintiff alleges that each of the Named Prisoners has harmed themselves or others, each been charged with additional crimes as a result of a deterioration in their respective mental states, and each has been classified to segregation for "30, 60, 90 to 180 or more days" in isolated conditions. (*Id.* at Page ID#8.) In addition, at one time or another, each of the Named Prisoners has had to lay or walk in their cell, in their own feces or urine, for "hours, days, [or] weeks" at a time. (*Id.*)

Plaintiff contends that each of the named Defendants "knew or should have known" that the Named Prisoners were diagnosed with mental illnesses requiring a specific treatment plan and a specific medication, and that to house them with other prisoners from the general prison population, or to confine them in administrative segregation, would pose a risk to the Named Prisoners' health or safety, and would cause them to engage in violent behavior. (*Id.* at Page ID##11, 14.) Nevertheless, Defendants allegedly disregarded those concerns, confining the Named Prisoners in "long term" segregation and "refus[ing]" to ensure that they received appropriate care. (*Id.* at Page ID#11.)

With respect to Defendants Heyns, Finco, Prelesnik, Huss, Norwood, Mutschler, and Calley, Plaintiff further contends that they were "fully informed" of the general conditions of confinement at ICF, through letters, grievances, and/or personal visits to the facility, but they "authorized" or "condoned" those conditions, failed to correct them, and/or failed to correct the actions of their subordinates. (*Id.* at Page ID#22.)

With respect to Defendant Richardson, Plaintiff alleges that he has a "pattern" of abusing mentally ill prisoners, which is described as follows:

[H]e has fabricated misconducts on [them,] threaten[ed] them with physical harm, deprived them of showers, food, yard, [and] appliances[.] [He has] verbally abused

- 3 -

them for filing grievances and other complaints . . . and [has] called them derogatory names, placed them [in] various types of restrictions and threaten[ed] to retaliate further against them if they continued exercising their rights. [He has] physically assaulted some prisoners and ha[s] spit in their tray and made racial remarks[.] [He has] sexually harassed some prisoners during segregation unit rounds and deprived them of clothing, blankets, sheets, [and/or] water for hours, days.

(*Id.* at Page ID#23.)

As relief in this action, Plaintiff seeks $500,000 in damages for each Named Prisoner, and an elaborate injunction requiring, among other things: that the MDOC transfer all mentally ill prisoners out of administrative segregation, to a designated facility that does not house prisoners in the general prison population; that all MDOC mental health staff be transferred to the designated facility so that the mentally ill prisoners can receive the full treatment and programming that they need; that mentally ill prisoners receive regular monitoring of their condition and receipt of all necessary medication; that all misconducts against prisoners with mental illnesses be expunged and any "good time" lost as a result of those misconducts be restored; that Defendants who are found to have violated the rights of the Named Prisoners be discharged from their position and prohibited from working at any MDOC facility; and that Defendants and the State of Michigan share the costs of all medical bills for the Named Prisoners. (*Id.* at Page ID##10, 12, 15-20.)

## Discussion

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr.*

*Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).

### A.  Class Action

Plaintiff purports to bring his complaint as a class action, but the Court declines to certify a class.  Plaintiff bears the burden of demonstrating that his suit meets the prerequisites of a class action under Rule 23 of the Federal Rules of Civil Procedure.  *See In re Am. Med. Sys.*, 75 F.3d 1069, 1086 (6th Cir. 1996).  Those requirements include, among other things:  (1) a class so

numerous that joinder of all members is impracticable; (2) questions of law or fact common to the class; (3) claims by the representative parties that are typical of claims by the class; and (4) adequate representation of the class. *See* Fed. R. Civ. P. 23(a). Plaintiff has not satisfied his burden. He does not even attempt to show that the suit meets the requirements of Rule 23. *See Johnson v. Wilkinson*, No. 99-3475, 2000 WL 553929, at *1 (6th Cir. Apr. 28, 2000) (affirming the denial of class certification where a *pro se* prisoner plaintiff "made no attempt to demonstrate the existence of the requirements of Fed. R. Civ. P. 23(a) and (b)").

Furthermore, it is well established that *pro se* litigants are inappropriate representatives of the interests of others. *See Garrison v. Mich. Dep't of Corr.*, 333 F. App'x 914, 919 (6th Cir. 2009) (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975)); *see also Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008); *Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003); *Palasty v. Hawk*, 15 F. App'x 197, 200 (6th Cir. 2001). Because Plaintiff is an incarcerated, *pro se* litigant,[1] he is not an appropriate representative of a class. For the foregoing reasons, therefore, the Court declines to grant class certification.

### B. Rights of Others

Absent class certification, Plaintiff lacks standing to bring claims on behalf of others. *Newsom v. Norris*, 888 F.2d 371, 381 (6th Cir. 1989); *Raines v. Goedde*, No. 92–3120, 1992 WL 188120, at *2 (6th Cir. Aug. 6, 1992). Furthermore, federal law specifies that cases in the courts of the United States may be conducted only by the parties personally or through counsel. *See* 28 U.S.C. § 1654 (providing that "in all courts of the United States, the parties may plead and conduct their own cases personally or by counsel, as, by the rules of such courts, respectively, are permitted

---

[1]To the extent that Plaintiff seeks appointment of counsel, his request will be denied for reasons stated in a separate order.

to manage and conduct causes therein").  Section 1654 clearly makes no provision for a *pro se* party to represent others, and the federal courts have long held that it preserves a party's right to proceed *pro se*, but only with respect to that person's own claims.  Only a licensed attorney may represent other persons.  *See Rowland v. Calif. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201–03 (1993); *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2003); *United States v. 9.19 Acres of Land*, 416 F.2d 1244, 1245 (6th Cir. 1969).  Thus, Plaintiff may not bring claims on behalf of other prisoners.

### C. Conclusory Allegations

To the extent that Plaintiff intends to assert claims on his own behalf, the complaint is devoid of allegations of specific conduct by the named Defendants which affected Plaintiff personally or violated his own constitutional rights.  Instead, the allegations consist of a laundry list of conditions faced by one or more members of a large group of prisoners at one time or another during their incarceration by the MDOC.  Such allegations make it impossible to discern the particular conditions faced by Plaintiff, the nature of his injuries, or the reason why any Defendant is alleged to be responsible for them.  Consequently, the allegations fall far short of the minimal pleading standards required to state a claim.  *See* Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"); *Twombly*, 550 U.S. at 570 (requiring the complaint to contain "enough facts to state a claim to relief that is plausible on its face"); *see also Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named

defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant). Because Plaintiff cannot raise the claims of others, his failure to allege an identifiable, personal deprivation by a named Defendant renders the complaint wholly insufficient to state a claim.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  April 17, 2013                           /s/ Janet T. Neff
                                                 Janet T. Neff
                                                 United States District Judge